IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES STEPHON WILLIAMS,           )
                                    )
        Petitioner,                 )
                                    )
        v.                          )   Civil Action No. 04-67E
                                    )   JUDGE SEAN MCLAUGHLIN
EDWARD KLEM,                        )   MAGISTRATE JUDGE BAXTER
                                    )
        Respondent.                 )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

    It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**

    Charles Stephon Williams is a state prisoner incarcerated at the State Correctional Institution at Mahanoy, located in Frackville, Pennsylvania.  Williams pled guilty on June 10, 1996, to assaulting a 9 month old infant, causing the victim to require reconstructive surgery of her vaginal and anal areas.  He is presently serving a sentence of 17 ½ to 35 years imprisonment.  Williams has filed a petition for writ of habeas corpus, and the Commonwealth has responded.  The petition is ripe for disposition.

    **1.    Procedural History.**

    Williams was scheduled for a jury trial on charges of Aggravated Assault, Aggravated Indecent Assault and Endangering the Welfare of Children on June 10, 1996 and, in fact, a jury panel had been assembled when Williams indicated his desire to enter a "no contest" plea.  The trial court completed most of the plea colloquy before rejecting William's no contest plea.  The court rejected the plea after Williams indicated that he was not in agreement with the factual basis for one or more of the charges against him, and because Williams indicated his belief

that he might have a defense to the charges. Upon reassembly of the jury panel, Williams decided to plead guilty, and did so during a lengthy colloquy in which he admitted his guilt several times. In fact, the trial court went to unusual lengths to ascertain that the plea was voluntary, at one point telling Williams:

>THE COURT: You had months to think about it. You've talked with your attorney. Now, either this happened and you did it or it happened and somebody else did it. If you didn't do it, do not plead guilty. Do you understand me? If you did not do it, do not plead guilty. Do you understand that?
>
>\* \* \*
>
>THE COURT: Now, if you did do it and you wish to plead guilty, fine. Even if you did do it you can still have a jury trial and have the jury stand up after they look at the evidence and say, well, we think the evidence is sufficient, but you're giving up a very valuable right by giving up a jury trial. Do you understand that?

(Guilty Plea Colloquy at 28-29). Williams insisted that he had committed the offense, which consisted of "forcing an unidentified object into the vaginal and anal areas of a nine month old infant . . . which caused severe and extensive injury to the infant's vagina, peritoneum and rectum, requiring extensive emergency reconstructive surgery and colostomy." (Trial Court Opinion of July 22, 1996 at 1). Only after having been satisfied by this second, lengthy plea colloquy did the court accept the plea or guilty.

A few days later, on June 13, 1996, Williams moved to withdraw his plea, asserting that the plea colloquy was defective, that he was induced to plead guilty by counsel and the court, and that he is innocent of the charges (State Court Record, Docket #18). A hearing was held on July 8, 1996, at which Williams testified and asserted that he was innocent of the charges, and that justice would be served by permitting him to withdraw his plea (State Court Record, Docket #19).

The trial court denied the motion to withdraw, and issued an opinion on July 22, 1996 in which it detailed the circumstances leading to the plea, and concluded that the plea was "knowingly, willingly and voluntarily entered . . .." (Id. at 7). Williams was thereafter sentenced, and his subsequent motion to modify his sentence was denied by the trial court. Williams thereafter filed an appeal to the Superior Court of Pennsylvania.

Williams raised three claims before the Superior Court: (1) whether he should have

been permitted to withdraw his plea under state law since the motion was made prior to sentencing and he asserted his innocence; (2) whether counsel was ineffective for inducing the plea through threats of a harsh sentence; and (3) whether the trial court erred in departing from applicable sentencing guidelines (Superior Court Opinion, November 17, 1997 at 3).  The Superior Court affirmed, finding that there was no requirement under state law that the motion to withdraw the plea be granted, and further found that no promises or threats had been made to induce the plea (Id. at 7).  Indeed, the Superior Court concluded that the trial court "provided [Williams] with several opportunities to withdraw his guilty plea based on coercion and/or his innocence. Indeed, on two earlier occasions, Judge Joyce urged [Williams] to proceed to trial. (Id. at 14 and 18).  It is clear that, at the hearing, [Williams] never indicated that the plea stemmed from coercion or pressure from his attorney." (Id. at 7).[1]  William's subsequent petition for allowance of appeal was initially granted by the Supreme Court of Pennsylvania, but was dismissed on October 4, 1999, as having been improvidently granted.

Williams filed a petition pursuant to the Post Conviction Relief Act (PCRA) on October 6, 2000.  Counsel was appointed, but filed a no-merit letter.  The trial court denied the petition on May 3, 2001, and filed an opinion in support of that order on August 30, 2001, explaining that the issues raised were either finally litigated or had been waived.  Williams appealed, and the Superior Court affirmed the denial of PCRA relief on July 24, 2003.  The Superior Court addressed the eight claims raised by Williams individually.  The Superior Court found claims that counsel was ineffective for inducing the plea, for failing to file a suppression motion, and for failing to advise Williams of possible defenses had been previously litigated since the validity of the guilty plea, and counsel's effectiveness with respect to recommending a guilty plea, were issues that had been presented to and decided by the Superior Court on direct appeal

---

[1]  Superior Court Judge Brosky dissented on the basis that he believed Pennsylvania case law required that the motion to withdraw be granted since it was made prior to sentencing and there was a facial claim of innocence made.  Judge Brosky did not consider whether the plea was knowing, voluntary and intelligent since he believed state law required withdrawal prior to sentencing even absent a showing of a constitutional infirmity in the plea.

(Superior Court Opinion, July 24, 2003 at 4).

The Superior Court found that the remaining claims of ineffective assistance had not been waived or previously litigated, but denied those claims on their merits. Williams' claim that counsel should have investigated whether the infant's mother committed the offense was rejected because there was no evidence that the mother was in any way involved in the actual injuries to the infant. In fact, charges had been filed against the victim's mother only for failing to immediately take the child to a hospital after she discovered the injuries. Thus, the Superior Court found that this supposed "defense" lacked any record support. (Id. at 6). Williams' next claim of ineffective assistance, that counsel failed to inform him that sentences could be imposed consecutively, was rejected because the guilty plea transcript reflects that Williams was informed of this possibility (Id. at 6-7). Likewise, Williams' claim that counsel should have moved for DNA testing of "physical evidence" was found to be specious because the record discloses that all of the physical evidence in the possession of the police, diapers and swabs from the victim, had been subjected to tests and the results thereof were made available. Finally, the assertion that counsel failed to discover that the victim's uncle was a convicted sex offender, and to present a defense centered on this fact, was found to be unsupported in the record, and to be irrelevant since there was no evidence that anyone other than Williams had access to the child at the time of the injuries (Id. at 8). Lastly, the Superior Court addressed Williams' claim that his counsel was married to a former member of the District Attorney's office, rejecting it as having no bearing on the fairness of the proceedings (Id. at 9).

Williams' subsequent petition for allowance of appeal was denied by the Supreme Court of Pennsylvania on February 20, 2004. Williams filed that instant petition for writ of habeas corpus on March 3, 2004, and raises the following claims:

1. The plea was not knowing and voluntary where counsel recommended that Williams plead guilty to avoid a harsher sentence.

2. Ineffective assistance of counsel for failing to investigate whether Andria Perez was the actual perpetrator.

3. Ineffective assistance of counsel for failing to investigate and raise a possible conflict of interest in that trial counsel was married to an assistant district attorney.

    4.      Ineffective assistance for failing to investigate possible exculpatory evidence in the nature of the victim's uncle having a history of sexual abuse of children.

    5.      Ineffective assistance for failing to move for DNA testing of evidence.

    6.      Ineffective assistance of counsel in failing to advise Williams of all possible defenses.

    7.      Ineffective assistance of counsel in failing to move for suppression of a videotaped statement.

(Docket #1). The Commonwealth has responded to the petition (Docket #20) and Williams filed a reply (Docket #22). The petition is now ripe for disposition.

### 2. Exhaustion.

Petitioner's final claim was never presented to the state courts. This, however, does not necessarily mean that his claim is barred by a failure to exhaust state court remedies. "If a claim has not been fairly presented to the state courts but state law clearly forecloses review, see Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir.1998), 28 U.S.C. § 2254(b)(1)(B) (1988) (amended 1996), exhaustion is excused, see, e.g., Doctor v. Walters, 96 F.3d 675, 681 (3d Cir.1996), but the doctrine of procedural default may come into play." Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002). Thus, even though petitioner has failed to comply with the exhaustion requirement with respect to his seventh claim, exhaustion may be excused in this case due to the lack of any further means by which petitioner may obtain state court review of that claim.

Petitioner's remaining claims were presented to the state courts during direct appeal and PCRA proceedings and, accordingly, state court remedies have been exhausted with respect to those claims.

### 3. Procedural Default.

Like the exhaustion requirement, the procedural default doctrine is based upon notions of comity and federalism. The procedural default barrier rests upon the "independent and adequate state grounds" doctrine, which dictates that federal courts will not review a state court

decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

A state's procedural rules are entitled to deference by federal courts, and violation of a state procedural rule may constitute an independent and adequate state ground for denial of federal review of habeas claims. Coleman v. Thompson, 501 U.S. at 750. Violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), cert. denied, 116 S.Ct. 1027 (1996).

Federal habeas review is not available to a petitioner whose constitutional claims have not been addressed on the merits due to procedural default unless such petitioner can demonstrate: 1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. at 750. The cause standard is satisfied when a petitioner demonstrates that some objective factor external to the defense impeded his efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986).

Williams' seventh claim, that counsel was ineffective for failing to move to suppress a videotaped statement, was waived under state law when Williams failed to raise it on direct appeal, and again when he failed to raise it during PCRA proceedings. Commonwealth v. Bond, 819 A.2d 33, 39 (Pa. 2002)("Even if this Court were to assume that these two claims of trial error were not previously litigated, they would be waived under the PCRA since appellant's present theories could have been presented on direct appeal."); 42 Pa.C.S. §9544(b)(issue is waived if petitioner failed to raise it and the issue could have been raised before trial, at trial, on appeal, in habeas corpus proceeding, or in prior proceeding under PCRA). This claim is, accordingly, subject to a state court procedural default which bars review in this court absent petitioner satisfying the "cause and prejudice" standard. To satisfy the cause standard, petitioner

must demonstrate that some objective factor external to the defense impeded his efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). Williams fails to allege any cause for his procedural default and, accordingly, the Court need not consider the question of actual prejudice. Murray, 477 U.S. at 495 (1986); Smith v. Murray, 527 U.S. 527, 533 (1986).

Although petitioner cannot demonstrate the necessary "cause," for the procedural default of his first claim, this court may still review that claim if Williams can show that a "fundamental miscarriage of justice would result from a failure to entertain the claim." McCleskey, 499 U.S. at 495. The court may, in its discretion, correct a fundamental miscarriage of justice if it appears that a "constitutional violation probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. See also Coleman, 501 U.S. at 748; McCleskey, 499 U.S. at 502. Under the "miscarriage of justice" standard, a petitioner must present new evidence of innocence and persuade the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Schlup v. Delo, 115 S.Ct. at 868; Glass, 65 F.3d at 15. This is a stronger showing than is required to establish prejudice and is found only in a truly "extraordinary" case. Schlup, 115 S.Ct. at 864. To succeed on an actual innocence claim, a petitioner must invoke "reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), and "show that it is more likely than not that no reasonable juror would have convicted him in light of new evidence presented in his habeas petition." Schlup, 513 U.S. at 327, 115 S.Ct. 851. The claim concerning the statement does nothing to establish William's innocence of the crimes charged. Indeed, Williams admitted in open court that he was guilty of the crimes. Therefore, Williams has failed to present evidence of a miscarriage of justice since he has failed to present any evidence of innocence of the crimes charged, and consideration of his final claim is barred by procedural default.

**4.   Merits.**

Section 2254 of the federal habeas corpus statute provides the standard of review

for federal court review of state court criminal determinations. 28 U.S.C. § 2254. Specifically, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. Id. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

A federal court may not issue the writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Recently, in Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the independent meanings of the "contrary to" and "unreasonable application" clauses contained within § 2254(d)(1).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 411-413.

The Supreme Court further clarified that a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. Id. at 409. "Under §2254(d)(1)'s unreasonable application clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Williams' claims are all necessarily couched as challenges to his guilty plea, or to

counsel's ineffectiveness in inducing the plea, or in failing to take actions which would have changed Williams' decision to enter the plea. The state trial court made factual findings on this issue, as did the Superior Court. Specifically, each court found that Williams evidenced an understanding of the rights he was waiving, and that he was informed of the direct consequences of his plea. In fact, the manner in which the plea occurred resulted in Williams being given the equivalent of two complete plea colloquies on the same day. The extensive plea transcript supports the state courts' findings that the plea was knowing, voluntary and intelligent.

Whether a plea of guilty is voluntary for purposes of the federal constitution is a question of federal law. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). To determine whether a guilty plea represents a voluntary and intelligent choice, a reviewing court must examine the totality of the circumstances surrounding the plea. Brady v. United States, 397 U.S. 742, 749 (1970). To ensure that a plea is both knowing and voluntary, it cannot have been induced through misrepresentation or coercion, Brady, 397 U.S. at 750, the defendant must have notice of the nature of the charge(s) against him, Henderson v. Morgan, 426 U.S. 637, 645 (1976), the defendant must have an understanding of the law in relation to the specific facts at issue, McCarthy v. United States, 394 U.S. 459, 466 (1969), and the defendant must appreciate the consequences of the plea, i.e., he must understand the rights he is surrendering through his plea.[2] In reviewing whether a guilty plea is "voluntary" for purposes of the U.S. Constitution, the federal courts must apply federal law. Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994). Id.

Once entered, a defendant does not have an absolute right to withdraw a guilty plea. United States v. Isaac, 141 F.3d 477, 485 (3d Cir. 1998). Rather, a plea of guilty entered by one fully aware of the direct consequences must stand unless induced by threats, misrepresentation, or improper promises. Mabry v. Johnson,(1978) 467 U.S. 504, 509 (1984). It is only when a defendant is not fairly apprised of the direct consequences of pleading guilty that he may challenge

---

[2] A defendant who enters a guilty plea waives his constitutional privilege right against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. See McCarthy v. United States, 394 U.S. 459, 466 (1969).

his guilty plea under the Due Process Clause. Id.

The claims in this case are all premised upon allegations that counsel rendered ineffective assistance leading up to the entry of the plea, or in failing to raise certain challenges after the plea. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)(quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)).

> Thus the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Fretwell, 506 U.S. at 169 (citing United States v. Cronic, 466 U.S. 648, 658 (1984)). See also Kimmelman v. Morrison, 477 U.S. 365, 374 (1986)(the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Strickland, 466 U.S. at 690. A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof. Cronic, 466 U.S. at 658.

The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The second prong requires a defendant to

demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. Unfairness or unreliability does not result unless counsel's ineffectiveness deprives the defendant of a substantive or procedural right to which the law entitles him. Fretwell, 506 U.S. at 372. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694 (emphasis added). A reasonable probability is one which is sufficient to undermine confidence in the outcome. Id.

The two-part Strickland test also applies to ineffective assistance of counsel claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985); Meyers v. Gillis, 142 F.3d 664, 666 (3d Cir. 1998). The first prong may be shown in several ways, e.g., where a plea offer is never communicated to the client; where plea information is communicated so incorrectly that it undermines the client's ability to make an intelligent decision whether or not to accept a plea offer, or where a guilty plea is induced by misleading statements of defense counsel. To satisfy the second "prejudice" prong, a defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have proceeded to trial. Hill, 474 U.S. at 58-59. A federal habeas petitioner seeking to withdraw a guilty plea based upon the ineffective assistance of counsel must show that counsel's advice was not within the range of competence demanded by attorneys in criminal cases; only serious derelictions on the part of counsel entitle a petitioner to relief. Siers v. Ryan, 773 F.2d 37 (3d Cir. 1985).

Here, the trial court's findings (echoed on appeal by the Superior Court) that Williams was made aware of all relevant information, that he understood that information, and that he understood the rights he was waiving when he pled guilty, are factual findings entitled to a presumption of correctness. Williams has not presented clear and convincing evidence that these findings are incorrect. To the contrary, the record in the state court shows that both the trial court and counsel were careful, indeed, they were meticulous in protecting Williams' right to proceed to trial. It was only after Williams himself consistently admitted his guilt, and repeatedly insisted that he wished to plead guilty, that his guilty plea was accepted. This being the case, the state courts' legal conclusions that Williams' plea was knowing and voluntary is not an unreasonable

application of federal law to the facts of this case.  Mabry v. Johnson, 467 U.S. 504, 509 (1984)(plea of guilty must stand absent proof that the defendant was unaware of the direct consequences of his plea, or if it was induced by threats, misrepresentations or improper promises), citing Brady v. United States, 397 U.S. 742, 755 (1970).

It is also worth noting that Williams attacks the advice given by counsel prior to the entry of the plea, and asserts, in effect,  that had counsel explained additional details or taken other actions (such as moving to suppress evidence, seeking testing of evidence, investigating other possible defenses, etc.) Williams may have decided to proceed to trial.  However, as the Supreme Court has cautioned:

> The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision.  A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.  . . . **We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought** or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

Brady, 397 U.S. at 757 (emphasis added).  The Supreme Court reiterated the same principle in Blackledge v. Allison, 431 U.S. 63, 73 (1977), wherein it cautioned that federal habeas relief should be especially rare when the petitioner stated, upon entering the guilty plea, that he or she did so knowingly and voluntarily.  Thus, Williams may not premise a finding of ineffective assistance on a claim that counsel decided to forego a possible defense where the plea proceeding establishes that the decision to enter the plea was knowing and voluntary.  And, in any event, the trial court forcefully advised Williams to plead guilty only if he actually did commit these crimes, and if he had decided to waive the "very important right" to a jury trial.  This plea was knowing, voluntary and intelligent and the state courts did not violate Williams' constitutional rights by refusing to permit him to withdraw that plea and proceed to trial.  None of Williams' claims warrant relief in this proceeding.

    **4.**    **Certificate of Appealability.**

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id.(28 U.S.C. § 2253(c)). Williams has not made a showing that he has been denied any of his constitutional rights. Accordingly, a certificate of appealability should be denied.

**III.**    **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that this Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                              /s/ Susan Paradise Baxter
                              SUSAN PARADISE BAXTER
                              UNITED STATES MAGISTRATE JUDGE

Dated: December 1, 2005

cc: The Honorable Sean J. McLaughlin
United States District Judge

Charles Stephon Williams
SCI Mahanoy
301 Morea Road
Frackville, PA 17932

John Paul Garhart, Esquire
Assistant District Attorney
Erie County Courthouse
140 West Sixth Street
Erie, PA 16501