IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT COURT OF PENNSYLVANIA

CHARLES STEPHON WILLIAMS,  :
        Petitioner : CIVIL ACTION NO. 04-67 ERIE
                        :
    v.                :
                        : CASE ASSIGNED TO:
EDWARD J. KLEM, et.al.,  : MAURICE B. COHILL, JR.
        Respondents : SENIOR DISTRICT COURT JUDGE

## PETITIONER'S OBJECTIONS TO
## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

    The Petitioner, Charles Stephon Williams ("Williams") acting <u>pro se</u>, unskilled in the arts and sciences of law respectfully submits this documnet in accordance to W.D.PA.LR 72.1.4 (B), and avers the following in support:

    1. On December 6, 2005 Williams receive via certified mail Chief Magistrate Baxter recommendation and report asserting that Williams be denied habeas corpus relief as well denied certificate of appealability.

    2. Williams raise the following objections to the report and recommendation ("R&R").

### OBJECTION (1)

    The Magistrate Judge R&R asserts that Williams seventh claim: "ineffective assistance of counsel in failing to move for suppression of a videotape statement", was never presented to the State courts is in error. Williams raise ineffective assistance of counsel by both trial and appellate counsel in accordance to <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Respt's Supplemental Document Index

filed with this United States District, 8/20/04.

Document <u>126</u>   Supplemental No Merit Letter of Atty. Pfadt, 2/23/2001
Document <u>128</u>   Def. <u>Pro Se</u> Supplemental Memorandum, 3/30/2001
         pages 23-24
Document <u>133</u>   Def. <u>Pro Se</u> PCRA Brief to Superior Court, undated
         pages 20-23

## OBJECTIONS (2)

The Magistrate Judge R&R fails to fully consider the standard of review of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214 (1996). The R&R omitted 28 U.S.C. § 2254(d)(2),"where federal habeas relief is also available if the state court's decision resulted in a decision that based upon an unreasonale determination of the facts in light of the evidence presented in the state court proceeding." (See Document <u>26</u>, page 8 of R&R)

## OBJECTION (3)

The Magistrate Judge R&R fails to review Williams second claim: "All state courts committed a violation of the Fourteenth Amendment of the United States Constitution in denying (Williams) motion to withdraw his guilty pleas **prior to sentencing with no substantial prejudice to the government and Williams asserted his innocence."** See Document <u>1</u> Petition for Habeas Corpus Relief back of page 7) Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request was made at even an earlier stage--should be liberally allowed. See <u>United States ex.rel.Culbreath v. Rundle</u>, 466 F.2d 730 (3d Cir. 1972);<u>United States v. Young</u>, 424 F.2d 1276 (3d Cir. 1970); Pa.R.Crim.P. 591, formerly Pa.R.Crim.P. 320; ABA Project Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 2.1 (Approved Draft, 1968); Note;

-2-

Pre-Sentence Withdrawal of Guilty Pleas in Federal Courts, 40 N.Y.U.L.Rev. 759 (1965). In <u>United States ex. rel. Culbreath v. Rundle</u>, supra, the Third Circuit stated:

> "It has been recognized under **Pennsylvania** and **Federal law** that a trial judge has discretion to refuse a request to retract a plea of guilty since there is no absolute right to withdraw such a plea. However, a request made **before** sentencing has been generally construed liberally in favor of the accused."

Id. at 732 of 466 F.2d (emphasis added)(footnoted omitted).

The Magistrate Judge R&R opined Superior Judge Brosky dissented on the basis that he believed Pennsylvania caselaw required that the motion to withdraw be granted since it was made made **prior** to sentencing and there was facial claim of innocence made. Judge Brosky relied on <u>Commonwealth v. Forbes</u>, 450 Pa. 185, 299 A.2d 268 (1973)("There is no absolute right to withdraw a guilty plea, where withdrawal request is made before sentencing the request should be liberally allowed, unless the prosecution has been substantially prejudiced".) In determining this standard the Pennsylvania Supreme Court look to the federal courts for guidance. See <u>Forbes</u>, <u>supra</u> at 299 A.2d 271 citing <u>United States ex rel. Culbreath v. Rundle</u>, 466 F.2d 730, 732 (3d Cir. 1972) ("It has recognized under **Pennsylvania** and **Federal law** that a trial judge has discretion to refuse a request to retract a plea of guilty since there is no absolute right to withdraw such a plea. However, a request made **before** sentencing has been generally construed liberally in favor of the accused."); <u>Heiser v. Ryan</u>, 951 F.2d 561, 564 (3d Cir. 1991)("If defendant can show "fair and just" reason to withdraw guilty plea, withdrawal is proper and refusal to allow withdrawal denies defendant of due process

-3-

unless prosecution can show that it is substantially prejudiced by allowing withdrawal.  See U.S.C.A. Const. Amend. 14

## OBJECTION (4)

The Magistrate Judge R&R does not address denying Williams an evidentiary hearing, where Williams showed evidence he is "actually innocent" of the crimes.  The R&R failed to consider a fundamental miscarriage of justice which ties to Williams **actual innocence**.  See Schulp v. Delo, 513 U.S. 298, 321-22, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  The "prototypical example" of the application of the "actual innocence" exception is where a petitioner is innocent of all criminal wrongdoing, such as where he claims that the government has convicted the **wrong man** for the crime.  See Sawyer v. Whitley, 505 U.S. 333, 340, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).  The Magistrate Judge R&R claims that Williams counsel failed to discover that the victim's uncle was a convicted sex offender, and to present a defense centered on this fact, was found to be unsupported on the record, and to be irrelevant since there was no evidence that anyone other than Williams had access to the child at the time of the injuries.

In contrast, Williams alerted the State courts and in his petition for writ of habeas corpus relief, that this claim was raised: "trial and (direct)appellate counsel were ineffective under both the Pennsylvania and United States Consitiutions not only on this particularly claim.  Especially, Andria Perez, Williams former co-defendant and mother of the child gave a written statement to Dr. George Vilshuis who examined the child stating "when the mother got the child at home she undressed the child and found blood in the diaper and came to ER."  Trial and

and (direct) appeal counsel denied effective assistance of counsel for failure to investigate this fact. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 691, 104 S.Ct. 2052. In <u>Williams v. Washington</u>, 59 F.3d 673, 679-82 (7th Cir. 1995), a case of alleged sexual abuse of child by her foster parent, counsel's failure to investigate was held to constitute ineffective counsel where an investigation would bolstering his client's credibility and information "indicat[ing] that, given the layout of the home ... the alleged assault could not have taken place as claimed.

Andria Perez's brother, Thomas Plyler, a convicted juvenile sex offender was in the child's grandmother residence when order per the Erie County Juvenile Probation Department not to be, if Deborah Plyler, grandmother of the child was babysitting children in her home, further, if it was discovered if Thomas Plyler was in the home he was to be placed in detention; (See Confidential Court Summary page 5 attached as Exhibit "A").

The evidence used to inflict the injuries on the child was was removed and destroyed by Andria Perez's mother, Deborah Plyler, the grandmother of the child. Register nurse Terri McCoy of Children's Hospital of Pittsburgh overheard Deborah Plyler"stated to person on phone to go into baby's room and take the clothes home that are on the floor by the closet."
(See Nurses' notes from Children Hospital of Pittsburgh, 11/13/95
 addenum from 4:30 p.m. from 11/10/95 recorded per Nurse Terri
 McCoy. Attached as Exhibit "B")

In <u>Schlup</u>, the Supreme Court stated that claims of actual innocence are rarely successful because the necessary evidence is

is  unavailable in the vast majority of cases.  513 U.S. at 324, 115 S.Ct. 851. The Supreme Court explained that a petitioner must support his allegations of constitutional error with new reliable evidence---whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence---that was not present at trial.  To Williams misfortunate, the evidence that Nurse Terri McCoy overheard the grandmother of the child tell someone on the phone **"go into baby's room and take the clothes home that are on the floor by the closet,** is new reliable evidence that was not presented at trial.  Moreover, neither trialnor direct appellate counsel did any type of investigation into this fact. Nor, investigated the fact Thomas Plyler was living in the home of a small child when told per Erie County Juvenile Probation Department to be placed in detention if the grandmother of this child continue babysitting children in her home.  (See Confidential Court Summary page 5 attached as Exhibit "A").

OBJECTION (5)

The Magistrate Judge R&R finds each court that Williams evidenced an understanding of the rights he was waving, and that he was informed of the direct consequences of his plea.  In fact, the manner in which the plea occurred resulted in Williams being given the equivalent of two complete plea colloquies on the same day.  However, the United States Supreme Court clear that no criminal defendant should plead guilty to a crime unless, and until, he has had explained to him and understands all of his constitutional rights and protections, **including the privilege**

-6-

against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to jury trial, and the right to confront one's accusers. Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); Hill v. Beyer, 62 F.3d 474 (3d Cir. 1995). In Hill, the Third Circuit Court of Appeals observed the petitoner had no previous experience with the criminal justice system which would show an independent awareness of the rights that were waived, never participated in a jury trial, either as a defendant or as a witness and though charged with several offenses as a juvenile but was never advised of his constitutional rights in connection with those charges and never served a prison sentence. See Hill, 62 F.3d at 485. In the instant case, Williams had no previous experience with the criminal justice system, never participated in a jury trial as a defendant or witness, and the State trial court never advise Williams he had a **constitutional right to confront his accusers nor the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment** as mandated in Boykin, Id.

Further, the plea form which was read into the record did not contain exposition of those rights except that the State trial court informed Williams have a right to a jury trial. See Guilty plea hearing transcript 6/10/96, page 2 lines 12-25, page lines 1-7)

    (ADA): Mr. Williams, I know you've had an opportunity to review this with your attorney, but I want to go over it with you now on the record. This is what we call our statement of understanding of rights prior to the entry of a plea, in this case a no contest, and that this form indicates the rights that everyone has that they give up when they enter a plea of either guilty or no contest. It explains on this form that you do understand the crimes have charged against you and through your attorney you've received a copy of those charges, and that you understand that you have a right to a trial by jury, which is scheduled

-7-

    to begin here this morning.
 At a jury trial you would be presumed innocent until and unless you were found guilty, and the Commonwealth would have to prove your guilt a reasonable doubt.  At a trial you'd participate with your attorney in selecting a jury of 12 people chosen from the citzens of Erie County.  Their verdict would have to be unanimous. They would have to agree 12 to nothing before they could find you guilty or not guilty on any of the charges against.  By pleading no contest here this morning you're forever giving up your right to a jury trial.  Do you understand that, sir?

 There is nothing on the plea form or the record that suggest Williams has a right to confront his accusers or the privilege against compulsory self-incrimination guaranted by the Fifth Amendment.  See <u>Hill v. Beyer</u>, 62 F.3d 474, 480 (3d Cir. 1995) citing <u>Boykin v. Alabama</u>, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).  How can Williams plea be intelligent, knowingly, and voluntary when he was not informed on the record of the vital and important constitutional rights? (See Guilty plea hearing transcript 6/10/96 page 25 lines 11-25)

 (THE COURT): Do you understand by signing this document and agreeing to this today you're giving up all those contained on this sheet, and, in fact, after today you'll have limited rights left on appeal.  Those would be to question the effectiveness of your counsel in representing you, the jurisdiction of this court to accept your plea, the voluntariness of your plea and the sentence that's imposed.  And I'm covering voluntariness right now.  Do you understand that those are the only four issues that you'll have left to argue to any appellate court about?

      (No response.)

 (MR. DANERI): He wants to know if you understand.

 (WILLIAMS): No, Your Honor.  Can you explain that again, Your Honor, the rights you give up?

     * * * * * * * * * * * * * *

 (See Guilty plea hearing transcript 6/10/96 page 26, lines 1-3)

(THE COURT): Mr. Williams, you understand that you have the right to a jury trial, right?

(Defendant nods head).

It is cumbent upon any court accepting a guilty plea to ensure that the criminal defendant has been apprised of and understands the constitutional rights waived upon entry of a guilty plea:

> "The hallmark of criminal jsutice system is fundamental fairness. Fundamental fairness dictates that guilty plea proceedings be undertaken sensitively."

<u>United States v. Carter</u>, 619 F.2d 293, 299 (3d Cir. 1980). Such sensitivity requires that, in the absence of testimony that a criminal defendant understands the constitutional rights he waives upon pleading guilty, a state trial court must engage in a colloquy on the record sufficient to ensure that the defendant has been apprised of his constitutional right to jury trial, **right to confront his accusers, and the privilege against self-incrmination.** Anything less fails to ensure that a criminal defendant has been adequately informed of his constitutional rights and renders the plea vulnerable to collateral attack.

Finally, how can it said that Williams pled guilty voluntary, knowingly, and intelligently when the plea form never stated what his constitutional rights are? (See Defendant's Statement of Understanding of Rights, attached as Exhibit "C"). Nor is there any indication on the record of these constitutional rights.

### OBJECTION(6)

The Magistrate Judge R&R is in error because Williams claims of ineffective assistance of counsel by both trial and

appellate counsel were not addressed under the Strickland standard. These claims were raised in the state courts with citation to the Federal Constitution, Pennsylvania Constitution, United States Supreme Court, and various United States Court of Appeals putting all State courts on notice he is raising a constitutional claim. See McCandless v. Vaughn, 173 F.3d 255 (3d Cir. 1999); Evans v. Court of Common Pleas, Del. County, Pa., 959 F.2d 1227 (3d Cir. 1992). Pursuant 28 U.S.C Section 2254(c) requires only that state prisoner give state courts a fair opportunity to act on their calims. Until recently, defendants in Pennsylvania had to raise any ineffective assistance claims "at the earliest stage in the proceedings at which the counsel effectiveness is being challenged no longer represents the defendant, "or else these claims would be considered waived. Commonwealth v. Hubbard, 472 Pa. 259, 372 A.2d 687, 695 n.6 (1977).

The Pennsylvania Supreme Court overruled Hubbard in 2002, holding that "as a general rule, petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." See Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726, 738 (2002). "Thus, any ineffectiveness claim will be waived only after a petitioner had had the opportunity to raise that claim on collateral review and has failed to avail himself of that opprtunity." Id. See Villot v. Varner, 373 F.3d 327, 333 n.5 (3d Cir. 2004) In Villot, Third Circuit Court of Appeals noted that this remedy was unavailable for Petitioner Villot, but in contrast, in the instant case, Williams petitioned the Superior Court in "Motion to Amend" asking the Superior Court

-10-

can the ruling in Commonwealth v. Grant, supra apply to Williams claims of ineffective assistance of counsel by both trial and appellate counsels'. The Superior Court granted this motion and it was duly noted in its opinion adjudicating his claims. (See Commonwealth v. (Charles Stephon) Williams, 908 WDA 2001, page 9, July 24, 2003. See also United States v. Garth, 188 F.3d 99 (3d Cir. 1999)("claim of ineffective assistance of counsel is properly raised for the first time in the District Court on motion to vacate."); United States v. Mannino, 212 F.3d 835 (3d Cir. 2000)("The Strickland test of effective assistance of counsel applies with equal force to analysis of the performance of appellate counsel.").

    Accordingly, Petitioner Williams respectfully request this District Court to review this "Objections to Magistrate Judge Recommendation and Report" and grant the Petition for Writ of Habeas Corpus Relief, or in the alternative, grant Petitioner Williams a certificate of appealability to the United States Court of Appeals for the Third Circuit.

    Respectfully submitted,

*/s/ Charles Stephon Williams*
Charles Stephon Williams
DB-4017 F/B
301 Morea Road
Frackville, Pennsylvania
17932-0001

DATE _DEC 12_, _2005_

CONFIDENTIAL COURT SUMMARY
Dispositional Hearing
RE: Catiline Plyler
October 9, 1996
Page 5

7. Deborah Plyler, the maternal grandmother of Paytien, is the second oldest child of Sophia Kasecky. She is currently 40 years old and living with her paramour who she considers to be her common-law husband. His name is Thomas L. Wolff (DOB: 11/29/42). They have lived together for 21 years, according to Ms. Plyler. Their relationship has been on and off due to Mr. Wolff's mental health and alcoholism problems over the years. Ms. Plyler indicates that Mr. Wolff has currently been sober for approximately three and a half years. Currently, he is attending a drug and alcohol counseling program at Behrend College. He has work experience as a machinist, but now collects SSD due to alcoholism problems. Ms. Plyler indicated that she has two children from a previous relationship. They are Wanda Plyler, age 25, who lives in Erie with a paramour. She is single with one child approximately two years old; Robert Plyler, Jr. is 22 years old, lives in Erie and is single with no children.

Wanda and Robert Plyler have not lived with Ms. Plyler since Wanda was two years old and Robert was four months old. Ms. Plyler indicates she did not know she was signing a custody paper when she separated from her husband, Robert Plyler. The children were raised from childhood by an aunt and uncle. Ms. Plyler's other two children are Andria Perez, the mother of Catiline, and Thomas Plyler (DOB: 10/20/77). Thomas Plyler was serviced through the Juvenile Probation Program. During his juvenile years, he has had an extensive history of mental illness that began in 1986. This has involved both inpatient and outpatient stays for various suicidal, homicidal and other types of behaviors. Over a period of time, it was determined that Thomas Plyler was a perpetrator of sexual abuse of two individuals, a male and a female, both approximately five years old at the time of the abuse. He did not complete the sexual offender counseling in full during his treatment program through Juvenile Probation.

Ms. Plyler and Mr. Wolff seem to minimize their son's history as a sexual offender. Mr. Wolff states that it was not sexual intercourse. Ms. Plyler feels Thomas did not abuse the five year old male who was in her home at the time of the abuse, although Thomas confessed to it.

It was further reported that Ms. Plyler allowed her son to babysit following the discovery that he had assaulted the five year old girl, but she denies this.

The Juvenile Probation record indicates that on April 1, 1993 Ms. Plyler was informed by Juvenile Probation that she could no longer babysit in her home while Thomas was living there. Apparently, she had continued to babysit three small children. If further babysitting occurred, Thomas was to be placed in detention.

EXHIBIT "A"

| DATE Mo.-Day-Yr. | TIME | |
|---|---|---|
| 1-13-95 | 11AM | Alert & pleasant, up in stroller at nurses station. |
| | 12N- 1pm | [illegible] U/S voiding as infant asleep, returned to out, asleep in abdominal [illegible]. FK caseworker & Rich Whelan clinical social worker in. |
| | 3pm | [illegible] asleep, but arouses easily. T+F po. OOB to nurses station up in stroller. |
| | 3³⁰pm | Mom & MGPs in to visit - Reviewed c̄ family update on [illegible] status and the need for the family to stay in the room c̄ infant until legal issues are resolved in AM concerning infant. Family verbalized an understanding. Clinical social worker notified of family's presence. — J. [illegible] RN |
| 11-13-95 | | addendum from 4³⁰ pm 11-10-95. This RN w/ OBS room obtaining V.S. on another pt., g-mother on phone c̄ family member. G-mother stated to person on phone to go into baby's room & take the clothes home that are on the floor by the closet. Detective Zimmerman aware. Terri McCoy RN |
| 11-13-95 | 4pm | OOB c̄ g-mom, afebrile, VSS. skin pink, warm & dry. Mucus membranes pink & moist. Apical strong and regular. Resp. regular & unlabored. Breath sounds clear bilat. Abd. soft & nondistended c̄ ⊕ bowel sounds. Stoma appliance intact, stoma pink & moist draining green emesis. Foley intact & patent to gravity draining clear yellow urine. Vaginal & rectal area s̄ redness or drainage. Scalp HL intact & flushes s̄ redness or edema. Tx 60cc enf c̄ fe po. Mom & g-father also here. DAD. |
| | 4³⁰pm | Clinical social worker here to talk c̄ mom & g-mother. Mom crying. |
| | 5³⁰pm | Baby to stroller c̄ safety belt on, physical status s̄ change, foley intact, HL s̄ change, stoma s̄ change, child awake & quiet, to nurses station. Mom, g-mother & g-father home. |
| | 6³⁰pm | Sleeping quietly in stroller. DAD Terri McCoy RN |

EXHIBIT "E"

EXHIBIT "B"

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
v. : OF ERIE COUNTY, PENNSYLVANIA
: CRIMINAL DIVISION
Charles Stephen Williams : No. 251 of 1995

DEFENDANT'S STATEMENT OF UNDERSTANDING OF RIGHTS
PRIOR TO GUILTY/NO CONTEST PLEA

I am the Defendant in the within matter and I hereby state that I desire to plead guilty/no contest in this matter; that my plea is made voluntarily by me without any pressure or promise not reflect on this paper, and that I fully understand all of my rights in choosing to plead guilty/no contest.
1. I understand the crime (s) I am charged with; I have received a copy of the information and I was notified of the crime (s) against me at my arraignment; my attorney has reviewed the charge (s) with me as well as the elements of each particular crime.
2. I understand that if I am pleading guilty/no contest without an attorney, I am waiving my right to an attorney. I know that I have a right to an attorney to represent me, including one to be appointed free of charge if I am unable to afford an attorney.
3. I understand that I have a right to a trial by jury. I am presumed innocent until found guilty and the Commonwealth must prove my guilt beyond a reasonable doubt. This right to trial includes my participation with my attorney to select a jury of twelve people chosen from members of this community. The jury's verdict must also be unanimous. I understand that in pleading guilty/no contest, I am forever giving up my right to a jury trial as explained here.
4. I understand that the maximum sentence for the crime (s) to which I am pleading guilty/no contest is _____
Ct 1: 20 yrs / $25,000
Ct 2: 10 yrs / $20,000
Ct 3: 5 yrs / $5,000    Total: 35 yrs / $50,000
5. I understand that any plea bargain in my case is set forth here and that there has been no other bargain and no other promise or threat of any kind to induce me to plead guilty/no contest. The only plea bargain in my case is: None

6. I understand that the Judge is not bound by the terms of any plea bargain unless he chooses to accept it. The Judge will announce his decision at the conclusion of the plea colloquy which follows my signing this paper. If the Commonwealth agrees to make a sentencing recommendation on my behalf, the Judge will not be bound by this recommendation and I understand that I will not be permitted to withdraw my guilty/no contest plea of this should occur.
7. I understand that the Judge who accepts my plea may NOT be the Judge who imposes sentence in my case under Erie County Court Rules. It is still my desire to plead guilty/no contest.

I HAVE SIGNED THIS PAPER ONLY AFTER FIRST READING AND REVIEWING IT.

_____    _____  6-10-96
Attorney for Defendant            Defendant                     Date

_____    _____
Attorney for Commonwealth         Judge

EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
CHARLES STEPHON WILLIAMS    :
                            :  C.A. No. 04-67 ERIE
       v.                   :
                            :  CASE ASSIGNED TO:
EDWARD J. KLEM, et.al.,     :  MAURICE B. COHILL, JR
       Respodents           :  SENIOR DISTRICT COURT JUDGE
```

CERTIFICATE OF SERVICE

I, Charles Stephon Williams proceeding pro se have serve the following persons per First-Class Mail. Pursuant to 28 U.S.C. section 1746 the information in this document are true and correct to the best of my knowledge.

UNITED STATES FIRST-CLASS MAIL SERVE UPON:

The Honorable Maurice B. Cohill, Jr.
Senior United States District Court Judge
17 South Park Row, Room B206
Erie, Pennsylvania 16501


John P. Garhart, Esquire
Assistant District Attorney
Erie County District Attorney's Office
140 W.Sixth Street
Erie, Pennsylvania 16501


DATE _DEC 12_, _2005_

Charles Stephon Williams
DB-4017 F/B
301 Morea Road
Frackville, Pennsylvania
17932-0001

December 12, 2005

Clerk's Office
United States District Court
P.O. Box 1820
Erie, PA  16507-0820


In re: <u>WILLIAMS v. KLEM, et.al.</u>, 04-67 ERIE


Dear Sir or Madam,


Please find enclosed original and one copy "Petitioner's Objections to Magistrate Judge Report and Recommendation.

If there any questions or concerns, feel free to write to me at the address below.

Respectfully forwarded,

*[signature]*

Charles S. Williams
DB-4017 F/B
301 Morea Road
Frackville, PA
17932-0001



Enclosures


cc: Senior District Judge Maurice B. Cohill
    All parties to this litigation